UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AINSLIE H. VOREL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARC SALKOVITZ and PAMELA SALKOVITZ,<br><br>Defendants. | Civil Action. No. 24-5933<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Ainslie H. Vorel, individually and on behalf of all other similarly situated persons ("**Plaintiff**"), by and through her undersigned counsel, Gibbons P.C., by way of the within Complaint against defendants Marc Salkovitz and Pamela Salkovitz (together, "**Defendants**"), alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this class action on behalf of herself and other similarly situated employees who were employed by Christmas Tree Shops, LLC ("**CTS**") in the State of New Jersey and were terminated without cause, as part of, or as the result of, the mass layoff and/or termination of operations ordered by Defendants (who operated and indirectly own CTS), and who were not provided with severance pay as required by the Millville Dallas Airmotive Plant Loss Job Notification Act, N.J.S.A. § 34:21-1 *et seq.*, as amended (the "**NJ WARN Act**").

2. Plaintiff, and the members of the class she seeks to represent, also did not receive 90 days' advance notification of their terminations, in violation of the NJ WARN Act.

3.  On April 10, 2023, major amendments to the NJ WARN Act became effective. Those amendments include, in relevant part, the following changes:

    a.  Employers must give 90-days' notice of an upcoming "mass layoff," "termination of operations," or "transfer of operations." N.J.S.A. § 34:21-2(a). Previously, only 60-days' notice was required.

    b.  A requirement to make mandatory severance payments. In instances when notice is required, the NJ WARN Act now dictates that severance – equal to one week of pay for each full year of employment – be paid to each affected employee "as compensation" for "back pay and losses associated with the termination of the employment relationship" and considered to be "earned in full" upon termination of the employment relationship. N.J.S.A. § 34:21-2(b).

    c.  If an employer fails to comply with the NJ WARN Act's notice requirements, the employer must also provide each affected employee with four (4) weeks of pay in addition to the above-noted mandatory severance. N.J.S.A. § 34:21-2(b).

    d.  The amendments also expanded the definition of "Employer" to include "any <u>individual</u>, partnership, association, corporation, <u>or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, and includes any person who, directly or indirectly, owns and operates</u> the nominal employer, or owns a corporate subsidiary that, directly or indirectly, owns and operates the nominal employer or makes the decision responsible for the employment action that gives rise to a mass layoff subject to notification." N.J.S.A. § 34:21-2(d) (emphasis added). In other words, the NJ WARN Act, as amended, provides for a private right of action against the individuals that own or operate an entity found to be involved in violation(s) of the NJ WARN Act.

4.  Plaintiff and all similarly situated New Jersey-based employees seek to recover from Defendants, as the ultimate owners, Executive Chairman (Marc Salkovitz) and Chief Executive Officer (Pamela Salkovitz) of CTS, the mandatory severance pay required under the NJ WARN Act—equivalent to one week of pay (calculated at their average rate of compensation during the last three (3) years of employment with CTS or the final regular rate of compensation, whichever is higher) for each full year that he or she worked. The New Jersey-based employees are also seeking, in addition to the mandatory severance payment, an additional four (4) weeks of

pay from Defendants, as the owners and operators of CTS, because CTS failed to provide them with 90 days' advance notice of their terminations.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) and (d)(6) as the amount in controversy exceeds $5,000,000 and the Plaintiff and Defendants are citizens of different states.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

7. Plaintiff is currently a resident of the State of Florida, but during the time period relevant to this Complaint, Plaintiff was a resident of the State of New Jersey and a full-time employee at CTS's headquarters located in Union, New Jersey. Members of the proposed class all worked in or reported to locations in the State of New Jersey during the relevant time period.

8. During the time period relevant to this Complaint, Defendant Marc Salkovitz was a resident of the Commonwealth of Massachusetts with an address 11 Twillingate Rd., Sudbury, MA 01776. Defendant Marc Salkovitz currently resides at 18 Summer Street, Unit 2, Andover, MA 01810.

9. During the time period relevant to this Complaint, Defendant Pamela Salkovitz was a resident of the Commonwealth of Massachusetts with an address 11 Twillingate Rd., Sudbury, MA 01776. Defendant Pamela Salkovitz currently resides at 18 Summer Street, Unit 2, Andover, MA 01810.

10. Upon information and belief, Defendants are husband and wife.

11. Nonparty CTS is a Massachusetts limited liability company that alleged in its bankruptcy petition that its principal place of business was located at 64 Leona Drive,

Middleborough, MA 02346, notwithstanding the fact its corporate headquarters office was located in Union, New Jersey, at the time of the bankruptcy filing.

12. During the time period relevant to this Complaint, Defendants transacted business in the State of New Jersey and participated in New Jersey's economic life.

13. During the time period relevant to this Complaint, Defendant Marc Salkovitz was the Executive Chairman of CTS.

14. During the time period relevant to this Complaint, Defendant Pamela Salkovitz was the Chief Executive Officer of CTS.

15. During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz were the two highest ranking officers of CTS.

16. During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz indirectly owned 100% of the membership interests in CTS.

17. During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz controlled the operations of CTS.

18. During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz had, and exercised, the authority to make the employment decisions that resulted in the employment terminations at CTS that resulted in the violations of the NJ WARN Act that are the subject of this Complaint.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

### Background

19. On May 5, 2023 ("**Petition Date**"), CTS and its affiliated debtors (collectively, the "**Debtors**") each filed voluntary petitions for relief under chapter 11, title 11, United States

4

Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

20. As of the date of this filing, neither Mark Salkovitz nor Pamela Salkovitz is a debtor in bankruptcy.

21. From the Petition Date until August 16, 2023, the Debtors operated their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

22. By Order dated August 16, 2023, the Bankruptcy Court converted the Debtors' cases to cases administered under chapter 7 of the Bankruptcy Code.

23. Defendants Marc Salkovitz and Pamela Salkovitz own 100% of the membership interests in Handil, LLC, a Delaware limited liability company ("**Handil**"), which in turn owns 100% of the membership interests in the Salkovitz Family Trust 2, LLC, a Massachusetts limited liability company ("**Salkovitz Trust**"), and Handil Holdings, LLC, a Delaware limited liability company ("**Handil Holdings**").

24. Each of Handil, Salkovitz Trust and Handil Holdings are debtors in the jointly administered CTS chapter 7 bankruptcy cases.

25. Neither Handil, Salkovitz Trust nor Handil Holdings are named defendants in this action.

26. In November 2020, Handil Holdings purchased Bed Bath & Beyond, Inc.'s 100% interest in CTS for the assumption of CTS's then indebtedness and obligations and additional consideration of approximately $137 million.

27. Handil's acquisition of CTS included the acquisition of Bed Bath & Beyond's lease for CTS' corporate HQ (as defined below) in Union, New Jersey.

28. CTS operated a chain of brick-and-mortar home goods retail stores that specialized in year-round seasonal goods at discount pricing. CTS stores offered a variety of

products including home decor, bed and bath products, kitchen and dining products, furniture, food and seasonal products.

29. CTS operated ten (10) retail locations in New Jersey. The retail stores were located in Brick, Bridgewater, Cherry Hill, Deptford, Freehold, Mays Landing, Paramus, Rockaway, Springfield, and Woodland Park, New Jersey (collectively, the "**NJ Stores**").

30. As of June 30, 2023, CTS employed approximately 3,600 full and part-time employees, approximately 531 of whom were based in New Jersey.

31. As of June 30, 2023, CTS operated (i) a distribution center in Middleborough, Massachusetts (the "**DC**"), (ii) its corporate headquarters in Union, New Jersey, which was relocated to Springfield, New Jersey in June 2023 (the "**HQ**"), as well as (iii) 82 CTS stores in 20 states, including the NJ Stores.

32. Following Defendants' indirect acquisition of CTS in late 2020, Defendants regularly attended corporate meetings conducted at the Union, New Jersey HQ.

33. Defendants Marc Salkovitz and Pamela Salkovitz also attended quarterly in-person meetings with CTS buyers in the Union, New Jersey HQ.

34. The CTS leadership team also had periodic in-person meetings with Defendants Marc Salkovitz and Pamela Salkovitz in the Union, New Jersey HQ.

35. On or about June 26, 2023, more than seven (7) weeks after the Petition Date, Marc Salkovitz advised senior management by telephone in New Jersey that they would need to begin terminating employees and directed them to prepare and issue WARN Act Notices.

36. Upon information and belief, Pamela Salkovitz, in her capacity as Chief Executive Officer of CTS, participated in the decision to commence the employment terminations at CTS.

6

37. In an e-mail dated June 29, 2023 from Laura Britton, the CTS Head of People and Culture, to CTS senior management, Ms. Britton made clear that a 90-day WARN notice is required for all of New Jersey "as there could be 50 or more impacted individuals across the state (includes PT with no tenure stipulation) – Also, NJ has a severance requirement of 1 week of pay for each full yr of svc."

38. Notwithstanding the clear financial distress that precipitated the May 5, 2023, bankruptcy Petition Date, CTS, by and through defendants Marc Salkovitz and Pamela Salkovitz, made the decision to delay issuing the WARN Act notices to employees until after the close of business on Friday, June 30, 2023 (the "**WARN Act Notice**"), a copy of which is attached hereto as **EXHIBIT A**.

39. The WARN Act Notice was delivered via e-mail to all CTS employees in New Jersey.

40. The WARN Act Notice received by New Jersey-based employees stated, among other things, that CTS employed in excess of 143 employees at HQ and employed 388 employees in the NJ Stores as of June 30, 2023.

41. The WARN Act Notice advised that the "first employee separations would be expected to take place during the 14-day period commencing on July 7, 2023 …"

42. Until July 7, 2023, or thereafter, Plaintiff and all similarly situated employees remained employed by CTS and worked at (or reported to) the HQ or the NJ Stores.

43. On or about July 3, 2023, CTS issued to its employees a *"Team Member Separation Toolkit"* (the "**Separation Toolkit**"). In the Separation Toolkit, CTS stated to its employees that "CTS was required to provide WARN notice to employees in Middleborough [Massachusetts], Springfield ([then] serving as the home location of most NJ corporate workers as well as store team members), and across the state of NJ."

7

44. Shortly thereafter, Plaintiff and all similarly situated employees were terminated without cause.

45. On July 19, 2023, Plaintiff filed a class action complaint in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") against CTS on behalf of herself and all other similarly situated former CTS employees, thereby commencing an adversary proceeding captioned *Vorel v. Christmas Tree Shops, LLC*, Adv. Proc. No. 23-50446 (TMH) (Bankr. D. Del.) (hereafter, the "**Adversary Proceeding**"). CTS is the only defendant named in the Adversary Proceeding.

46. The Adversary Proceeding is currently subject to a standstill agreement between Plaintiff and the chapter 7 trustee.

### New Jersey Warn Act Class Allegations

47. Plaintiff brings this Claim for Relief for violations of the NJ WARN Act on behalf of herself and a class of similarly situated persons pursuant to N.J.S.A. § 34:21-1 *et seq.* and Federal Rules of Civil Procedure 23(a) and (b) who worked at or reported to CTS's New Jersey employment sites (HQ and NJ Stores) and who were terminated without the legally required severance pay or the required four weeks' pay due to CTS's failure to provide the 90 days' notice that is also required by the NJ WARN Act. (the "**NJ WARN Class**").

48. Beginning on or about July 7, 2023, CTS terminated Plaintiff and in excess of one hundred (100) similarly situated New Jersey-based employees.

49. The terminations were subject to the mandatory severance and the 90-day notice required by the NJ WARN Act, N.J.S.A. § 34:21-2(a) and (b).

50. CTS terminated Plaintiff and the similarly situated New Jersey-based employees without having provided either the mandatory severance pay or the ninety (90) days' notice required by the NJ WARN Act, and thus violated that statute.

51. At the time of these employee terminations, Defendants Marc Salkovitz and Pamela Salkovitz were each an "employer" within the meaning of N.J.S.A. § 34:21-2(d).

52. The persons in the NJ WARN Class identified above ("**NJ WARN Class Members**") are so numerous that joinder of all members is impracticable.

53. Upon information and belief, the NJ WARN Class consists of at least 500 former CTS employees.

54. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently contained within the books and records of CTS and are thus within the sole control of the chapter 7 trustee, George L. Miller, a non-party to this action.

55. On information and belief, the identity of the members of the NJ WARN Class and the recent residential address of each of the NJ WARN Class Members is contained in the books and records of CTS.

56. On information and belief, the rate of pay and benefits that were being paid by CTS to each NJ WARN Class Member at the time of his/her termination is contained in the books and records of CTS.

57. Each of the NJ WARN Class Members was affected by the Defendants' violation of the provisions NJ WARN Act as alleged herein.

58. Common questions of law and fact exist as to members of the NJ WARN Class, including, but not limited to, the following:

   a. whether the members of the NJ WARN Class were employees of CTS who worked at a covered employment site of CTS;

      b. whether CTS unlawfully terminated the employment of the NJ WARN Class Members without cause on their part and without giving them 90 days' advance written notice in violation of the NJ WARN Act; and

      c. whether CTS has unlawfully failed to pay the NJ WARN Class Members severance pay, additional four weeks' pay, and benefits as required by the NJ WARN Act.

59. Plaintiff's claims are typical of those of the NJ WARN Class. Plaintiff, like other NJ WARN Class Members, worked at or reported to one of CTS's New Jersey employment sites and was terminated as part of the mass layoffs/termination of business operations implemented by CTS at the direction of Defendants, who operated and indirectly own CTS.

60. Plaintiff will fairly and adequately protect the interests of the NJ WARN Class. Plaintiff has retained Gibbons P.C. as counsel competent and experienced in complex class actions and employment litigation.

61. Class certification of these claims is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the NJ WARN Class predominate over any questions affecting only individual members of the NJ WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation — particularly in the context of NJ WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court, and damages suffered by individual members of the NJ WARN Class are small compared to the expense and burden of individual prosecution of this litigation.

62. Concentrating all the potential litigation against Defendants Marc Salkovitz and Pamela Salkovitz concerning the NJ WARN Act rights of the members of the NJ WARN Class in this Court will obviate the need for unduly duplicative litigation that might result in

inconsistent judgments and will conserve judicial and the parties' resources. Accordingly, class certification is the most efficient means of resolving the NJ WARN Act rights of all the members of the NJ WARN Class.

63. Plaintiff intends to send notice to all NJ WARN Class Members to the extent required by Rule 23.

## **CLAIMS FOR RELIEF**

### **COUNT I:**

**Failure to Pay Severance in Violation of the New Jersey WARN Act**

64. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the proceeding paragraphs of the Complaint as if fully set forth herein.

65. Plaintiff and similarly situated NJ WARN Class Members who worked at or reported to CTS's employment sites in New Jersey were "employees" of CTS as defined in the NJ WARN Act.

66. CTS terminated the employment of Plaintiff and each of the NJ WARN Class Members pursuant to a "mass layoff" and/or "termination of operations" as defined in the NJ WARN Act.

67. At all relevant times, Defendants, directly or indirectly, owned, operated and controlled CTS and/or made the decisions with respect to the employment actions that required severance to be paid to Plaintiff and each of the NJ WARN Class Members under the NJ WARN Act.

68. At all relevant times, Defendants were "employer(s)" as defined in the NJ WARN Act, N.J.S.A. § 34:21-2(d).

11

Case 2:24-cv-05933-BRM-MAH Document 1 Filed 05/08/24 Page 12 of 14 PageID: 12

69. Defendants violated the NJ WARN Act by implementing the mass layoff and/or termination of operations at CTS employment sites in New Jersey without providing the severance pay required by the NJ WARN Act.

70. As a result of Defendants' violations of the NJ WARN Act, Plaintiff and each of the NJ WARN Class Members are entitled to damages equal to (i) one week of pay for each full year of employment with CTS, with the rate of pay calculated at the average regular rate of compensation received by the employee during the last three (3) years of employment, or the final regular rate of compensation paid to the employee, whichever rate is higher. N.J.S.A. § 34:21-2.

71. Plaintiff and each of the NJ WARN Class Members are also entitled to the costs of the action, including reasonable attorneys' fees; and compensatory damages, including lost wages, benefits and other remuneration pursuant to N.J.S.A. § 34:21-6.

## COUNT II:

**Failure to Pay Additional Four (4) Weeks' Pay Due to Failure to Provide Notice in Violation of the New Jersey WARN Act**

72. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the proceeding paragraphs of the Complaint as if fully set forth herein.

73. At all relevant times, Defendants were "employer(s)" as defined in the NJ WARN Act, N.J.S.A. § 34:21-2(d).

74. Defendants violated the NJ WARN Act by implementing the mass layoff and/or termination of operations at CTS employment sites in New Jersey without providing the requisite written notice at least 90 days before the terminations were implemented to: (1) each affected employee; (2) the New Jersey Commissioner of Labor and Workforce Development; and (3) the chief elected official of each municipality within which the termination occurred.

12

75. As a result of Defendants' violations of the NJ WARN Act, Plaintiff and each of the NJ WARN Class Members are also entitled to four (4) weeks of pay in addition to mandatory severance pay as alleged above, as required by N.J.S.A. § 34:21-2.

76. Plaintiff and each of the NJ WARN Class Members are also entitled to the costs of the action, including reasonable attorneys' fees; and compensatory damages, including lost wages, benefits and other remuneration pursuant to N.J.S.A. § 34:21-6.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ainslie H. Vorel, individually and on behalf of all other similarly situated persons, prays for the following relief against Defendants Marc Salkovitz and Pamela Salkovitz:

1. Certification that, pursuant to FED. R. CIV. P. 23 (a) and (b), Plaintiff and other similarly situated former employees constitute a class for purposes of the NJ WARN Act;

2. Designation of Plaintiff as class representatives for the NJ WARN Class;

3. Appointment of the undersigned counsel as Class Counsel for the NJ WARN Class;

4. Judgment in favor of Plaintiff and each NJ WARN Class Member, and against Defendants, jointly and severally, for severance pay equivalent to one week of pay (calculated at their average rate of compensation during the last three (3) years of employment or the final regular rate of compensation, whichever is higher), plus an additional four (4) weeks of pay pursuant to N.J.S.A. § 34:21.2(b), as well as costs of the action, including reasonable attorneys' fees; and compensatory damages, including lost wages, benefits and other remuneration pursuant to N.J.S.A. § 34:21-6; and

5. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to FED. R. CIV. P. 38.

Dated: May 7, 2024
Newark, New Jersey

GIBBONS P.C.

*/s/ Robert K. Malone*

Robert K. Malone
Mark B. Conlan
Christopher P. Anton
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
mconlan@gibbonslaw.com
canton@gibbonslaw.com

*Attorneys Plaintiff Ainslie H. Vorel, Individually and as Proposed Class Representative*